IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RUTH LANETTE HENDERSON-WASHINGTON, § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:23-cv-00006-BP |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § § § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Ruth Lanette Henderson-Washington ("Henderson-Washington") applied for Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that she was not disabled. Henderson-Washington appealed. At issue is whether substantial evidence supports the decision of the Administrative Law Judge ("ALJ") that Henderson-Washington is generally capable of performing sedentary work and whether the ALJ applied the correct legal standard in reaching his conclusion. Finding that substantial evidence supports the decision and that the ALJ applied the correct legal standard, the Court **AFFIRMS** the Commissioner's denial of Henderson-Washington's application.

**I.      BACKGROUND**

Henderson-Washington applied for DIB on September 30, 2019, alleging disability beginning July 23, 2019, due to the combined effects of diabetes, bipolar syndrome, depression, post-traumatic stress disorder ("PTSD"), migraines, tremors, obsessive-compulsive disorder ("OCD"), osteoarthritis, neuropathy, anxiety, gout, asthma, sleep apnea, overactive bladder, edema, carpal tunnel, back pain, obesity, pins in her right elbow, muscle spasms in her left leg, and a torn meniscus in her right leg. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 11-1 at 81-

82, 276-77. The Commissioner denied her application initially and upon reconsideration. *Id.* at 159-62, 165-67. Henderson-Washington challenged the Commissioner's denial in a hearing before an ALJ, who affirmed the Commissioner's decision. *Id*. 9-36, 43-80.

Henderson-Washington appealed the decision to the Social Security Appeals Council ("AC"), which denied review. Tr. 1-6. "[T]he Commissioner's decision does not become final until after the [AC] makes its decision denying the claimant's request for review." *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Thereafter, Henderson-Washington filed this civil action seeking judicial review of the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

## II.    STANDARD OF REVIEW

Title II of the SSA governs the DIB program. *See* 42 U.S.C. §§ 401-434. Claimants seeking benefits under this program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382-83 (5th Cir. 1988) A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [her] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis*, 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v.*

*Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

**III. ANALYSIS**

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 15-28. First, the ALJ found that Henderson-Washington had not engaged in substantial gainful activity since December 3, 2019. *Id*. at 15. Second, she found ten medically severe impairments: degenerative disc disease of the spine; diabetes mellitus; neuropathy; bilateral knee osteoarthritis; obesity; asthma; right shoulder tendinosis/degenerative joint disease; depression; anxiety; and PTSD. *Id*. The ALJ also found nonsevere medical impairments, including an old right elbow fracture and hypertension. *Id*. Third, she identified no impairment or combination of impairments that qualified under the federal regulatory list. Tr. 16-19. The ALJ then assessed Henderson-Washington's RFC:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a), except occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, and crawl; frequently reach in all directions with the right upper extremity; occasional concentrated exposure to environmental irritants such as dust, odors, fumes, gases, and poor ventilation; can understand,

4

> remember, and carry out detailed but not complex instructions, make all work-related decisions, and respond appropriately frequent changes in the workplace.

Tr. 19. Using this RFC and relying on testimony from a vocational expert ("VE"), the ALJ determined at step four that Henderson-Washington could perform PRW, specifically as an insurance customer service representative. *Id*. at 25. The step-four finding meant that Henderson-Washington was ineligible for DIB because she was not disabled. *Id.*; *see Lovelace*, 813 F.2d at 58. After concluding that Henderson-Washington's age, education, work experience, and RFC with additional limitations still allowed her to perform the requirements of another job, the ALJ then found Henderson-Washington "not disabled" under §§ 216(i) and 223(d) of the SSA. Tr. 28.

Henderson-Washington argues two grounds for reversal. First, she asserts that the ALJ inadequately evaluated Physical Therapist Andy Miles's opinion under the 20 C.F.R. § 404.1520c standard. ECF No. 14 at 11-15. Second, she contends that the RFC assessment did not account for her moderate mental limitations in concentration, persistence, and maintaining pace. *Id*. at 15-17.

**A.     The ALJ properly considered Mr. Miles's opinion.**

Henderson-Washington contends that "the ALJ's evaluation of the opinion of Andy Miles, PT was legally inadequate under 20 C.F.R. § 404.1520c." ECF No. 14 at 11. An ALJ has broad discretion to resolve conflicts in the evidence without the Court second-guessing her. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)). An ALJ is free to reject any medical opinion when the evidence supports a contrary conclusion. *Qualls* v. *Astrue*, 339 F. App'x 461, 466 (5th Cir. 2009) (quoting *Bradley* v. *Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)); *see also Harris*, 209 F.3d at 417. An ALJ may even completely disregard the opinion of a treating physician. *See Brown*, 192 F.3d at 500.

Regardless of whether an ALJ accepts or rejects a medical opinion, the ALJ must "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical

5

opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b); *see also Guy v. Comm'r of Soc. Sec.*, No. 4:20-cv-01122-O-BP, 2022 WL 1008039, at *3 (N.D. Tex. Mar. 14, 2022), *rec. adopted* 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022). The articulation requirement is to "allow a subsequent reviewer or reviewing court to trace the path of an [ALJ]'s reasoning." 82 Fed. Reg. 5858 (Jan. 18, 2017). This requirement is obligatory for claims filed on or after March 27, 2017. *Id.* Henderson-Washington applied for DIB on September 30, 2019, and is, therefore, entitled to the explanation. Tr. 81-82.

While ALJs need not exhaustively recount their reasoning, they must "explain how [they] considered the supportability and consistency factors for . . . medical opinions . . . in [a claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2). Mere evidentiary summaries fall short of § 404.1520c's requirements, as evidenced in the plain meaning of the regulatory text. *Id.* ALJs consider five factors when evaluating medical opinions, and they must explain how they considered the two "most important factors": supportability and consistency. *Id.*

Determining supportability and consistency involve different analyses and "require the ALJ to explain [her] reasoning for [her] persuasiveness finding with respect to each factor." *Heleodoro C. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-3520-E-BK, 2022 WL 4259148, at *3 (N.D. Tex. July 20, 2022) (alteration in original) (quoting *Kilby v. Kijakazi*, No. 4:20-cv-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022)) *rec. adopted* 2022 WL 4360555 (N.D. Tex. Sept. 19, 2022). While "supportability" measures the degree of relatedness between a medical provider's opinion and the medical evidence he provides to support that opinion, "consistency" is "an all-encompassing inquiry" that focuses on "how well a medical source is supported, or not supported, by the entire record." *Id.* (emphasis removed); *See* 20 C.F.R. §§ 404.1520c(c)(1), (2).

The ALJ evaluated Mr. Miles's opinion at step four. Tr. 25. In her decision, the ALJ explained why she found Mr. Miles's testimony unpersuasive:

> As an initial matter, Mr. Miles is a physical therapist, which is not an acceptable medical source under social security regulations 20 CFR 404.1502; 20 CFR 404.1527; 20 CFR 416.902. Furthermore, the opinion is unsupported by the claimant's improved knee symptoms and functional abilities with physical therapy and injections (Ex. D10F/70; B18F18) and inconsistent with her improved lumbar spine symptoms and similar treatment. Ex. D30F/20; D33F/16-19. Moreover, the claimant's lack of a significant rotator cuff tear (Ex. D34F/2-3) and her well controlled diabetes (Ex. D24F/24; D16F/35) are inconsistent with this opinion.

Tr. 25. Henderson-Washington does not dispute the ALJ's supportability explanation, only her consistency explanations. ECF No. 14 at 11-12.

Henderson-Washington first broadly argues that the ALJ insufficiently articulated her finding that Mr. Miles's medical opinion was unpersuasive because she "cited a mere two cherry picked records" from the administrative record. ECF No. 14 at 12. In fact, the ALJ cited to five different records and discussed three grounds for finding Mr. Miles's opinion inconsistent with the record. Tr. 25 (citing Tr. 2392, 2475-78, 2487-88, 2257, 1988). Henderson-Washington does not discuss the ALJ's finding that her improved lumbar spine symptoms (Tr. 25 (citing Tr. 2392, 2475-78)) are inconsistent with Miles's opinion. Rather, she focuses on the ALJ's discussion of her lack of a significant rotator cuff tear and well-controlled diabetes. ECF No. 14 at 11. Here, Henderson-Washington relies in part on *Johnson v. Kijakazi*. No. 620CV00845ADADTG, 2023 WL 198628, at *2 (W.D. Tex. Jan. 17, 2023) (holding that the summary reasoning offered by the ALJ "prevented [the p]laintiff from being able to adequately respond or address the ALJ's findings"). But the reasoning of the ALJ in *Johnson* was limited to two lines that did not directly discuss evidence from the record that conflicted with the rejected opinion. *Id*. Here, the ALJ noted a significant amount of evidence from the record that showed inconsistencies in Mr. Miles's opinion.

As for Henderson-Washington's specific contentions regarding the ALJ's evaluation of Mr. Miles's opinion, she first argues that while the ALJ correctly noted her lack of a rotator cuff tear, she improperly ignored a posterior labral tear, rotator cuff tendinosis, and acromioclavicular joint degenerative changes with small joint effusion. ECF No. 14 at 13 (citing Tr. 2487-88). This is incorrect. The ALJ discussed these issues earlier in her decision. Tr. 22 (citing Tr. 2487-88). And even if the ALJ did not discuss these conditions previously, this would not diminish her sufficient articulation that a lack of a rotator cuff tear is inconsistent with Mr. Miles's opinion. The ALJ's reasoning is understandable and "allow[s] a subsequent . . . reviewing court to trace the path of [her] reasoning." 82 Fed. Reg. 5858. To the extent Henderson-Washington's argument asks the Court to reweigh the evidence or substitute its judgment for the ALJ's, it may not do so. *Harris*, 209 F.3d at 417. Accordingly, there is no error with the ALJ's articulation of the rotator cuff inconsistency.

Second, Henderson-Washington argues that the ALJ failed to demonstrate how her well-controlled diabetes was inconsistent with the bilateral knee issues and low back and right arm pain on which Mr. Miles based his opinion. ECF No. 14 at 14 (citing Tr. 2192). Henderson-Washington cites to *Price v. Astrue*, 401 F. App'x 985, 987 (5th Cir. 2010), arguing that the ALJ did not build a "logical and accurate bridge" within her RFC. However, the ALJ previously discussed Henderson-Washington's diabetes-related right distal median sensory neuropathy, right tibial axonal neuropathy, and peroneal sensory neuropathy and noted that her diabetes was well-controlled. Tr. 22 (citing Tr. 533, 1988). Taken with the ALJ's explanation that her well-controlled diabetes is inconsistent with Mr. Miles's opinion, the ALJ articulated that the positive impact of her well-controlled diabetes on her right-side neuropathy is inconsistent with Mr. Miles's opinion. The articulation requirement is to "allow a subsequent reviewer or reviewing court to trace the

path of an [ALJ]'s reasoning." 82 Fed. Reg. 5858. Here, the Court was able to trace the ALJ's reasoning. Thus, the ALJ properly articulated that Henderson-Washington's well-controlled diabetes was inconsistent with Mr. Miles's opinion, and there is no error.

Even if the ALJ did not sufficiently articulate the well-controlled diabetes inconsistency, any error was harmless. The "harmless error rule" counsels against reversal unless the error caused harm. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmful error occurs where "the substantial rights of a party have been affected." *Id.* Harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required."). The law requires an "accurate and logical bridge between the evidence and the final determination[,]" not between each cited inconsistency and the finding that a medical opinion is unpersuasive. *Price*, 401 F. App'x at 987. Without the well-controlled diabetes discussion, the ALJ's articulation of Henderson-Washington's improved lumbar spine symptoms and lack of a rotor cuff tear alone satisfy the ALJ's requirement, and she properly found Mr. Miles's opinion unpersuasive. Accordingly, if the ALJ improperly articulated the well-controlled diabetes inconsistency, the error is harmless and does not require reversal.

Last, Henderson-Washington argues that the ALJ improperly ignored evidence consistent with Mr. Miles's opinion, specifically: (1) an MRI of the lumbar spine showing multilevel spondylosis with disc dehydration, endplate spurring, annular tear, central canal narrowing and descending nerve root impingement of the existing left and likely exiting right L5 nerve roots, as well as multilevel neural foraminal narrowing with existing nerve root impingement of the exiting

9

left and likely exiting right L5 nerve roots (ECF No. 14 at 14 (citing Tr. 2233)); (2) "an x-ray of the left shoulder" demonstrating moderate right acromioclavicular joint osteoarthritis (*id*. (citing Tr. 2489)); (3) neck and back pain, muscle weakness, and gait abnormality, unresolved by physical therapy from July 19, 2021, to March 1, 2022 (*id.* (citing Tr. 2466-2474)). Henderson-Washington relies in part here on a decision in which the Court found "that the ALJ's mischaracterization of the only examining physician's opinion concerning [the p]laintiff's mental limitations was prejudicial error." *Oran R. B. v. Kijakazi*, No. 3:20-cv-3409-BN, 2022 WL 3974264 (N.D. Tex. Aug. 31, 2022). But here, there was no such error because the ALJ did not mischaracterize Mr. Miles's opinion (*compare* Tr. 25 *with* Tr. 2192-95), and there are no qualifying physician opinions in the record. *See* Tr. 24 ("Dr. Ribald's statement does not qualify as a medical opinion (20 CFR 404.1513(a)(2)), and therefore will not be assessed for persuasiveness.").

Moreover, "[t]he ALJ's failure to mention a particular piece of evidence does not necessarily mean that [s]he failed to consider it[.]" *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005). And contrary to Henderson-Washington's assertions, the ALJ considered the entire record. *See* Tr. 19-24. In fact, while Henderson-Washington claims that the ALJ did not even consider imaging notes from 2021 (ECF No. 14 at 13 (citing Tr. 2233)), the ALJ discussed these directly. Tr. 21 (citing Tr. 2232-33). Regardless, Henderson-Washington's argument misses the mark. Whether or not the ALJ "ignored" the above-mentioned evidence, Henderson-Washington asks the Court to overstep its reviewing role here and substitute its judgment for the ALJ's, which the Court may not do. *Harris*, 209 F.3d at 417. The argument that the evidence the ALJ "ignored" contradicts the ALJ's finding is essentially a request that the Court reweigh the evidence and assign more weight or a different meaning to individual medical reports, diagnoses, or other pieces of evidence than the ALJ did. This is not a proper challenge to the ALJ's RFC. Rather, it is an

argument that the ALJ did not give enough weight to those parts of the record. "These are precisely the kinds of determinations that the ALJ is best positioned to make." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Instead, the Court's inquiry is limited to whether or not the ALJ sufficiently articulated her finding that Mr. Miles's opinion was unpersuasive such that the Court may find substantial evidence that supports the Commissioner's decision. Here, the ALJ articulated her reasons for rejecting Mr. Miles's opinion sufficiently to permit judicial review, considering both the supportability and consistency of the opinion in light of other evidence in the record. Accordingly, the ALJ in her broad discretion properly rejected Mr. Miles's opinion. Because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court will not second guess the ALJ's determination of the weight to be afforded Mr. Miles's opinion compared to the rest of the evidentiary record. *See Brown*, 192 F.3d at 496. Considering the clarity of the ALJ's explanation and the degree to which she supported her conclusion with references to specific evidence in the record, substantial evidence supports the Commissioner's conclusion, and reversal is not required.

**B.     The ALJ accounted for Henderson-Washington's mental impairments in the RFC.**

Henderson-Washington also argues that the ALJ failed to properly account for her moderate limitation in ability to concentrate, persist, or maintain pace in the RFC assessment. ECF No. 14 at 15-17. When making her step-two analysis of Henderson-Washington's mental difficulties according to the "special technique" set out in 20 C.F.R. § 404.1520a, the ALJ found that Henderson-Washington had moderate difficulties in concentration, persistence, or maintaining pace Tr. 18.

In determining her RFC, the ALJ stated she "considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" Tr. 19. She considered Henderson-Washington's medical records and testimony regarding her mental impairments, including her "reported deficits with attention and concentration, which are at times noted as normal but also at times mildly impaired." Tr. 20 (citing Tr. 315-17), 23 (citing Tr. 669, 676, 703-709, 727, 741, 745, 769, 806, 824, 883, 913, 1010, 1521, 1556-57, 1611, 1635). Finally, the ALJ evaluated the medical opinions and prior administrative medical findings, including the Disability Determination Service mental health consultant assessment, which found that Henderson-Washington had a moderate limitation with concentration and persistence. Tr. 23-24 (citing Tr. 92-94, 117-120). The same assessment showed that she could understand, remember, and carry out detailed but not complex instructions, and the ALJ's RFC reflected this. Tr. 19, 117, 120.

The ALJ's findings regarding Henderson-Washington's mental limitations at step two need not match the RFC determinations, as one has to do with impairments and the other with function. Rather, the analysis taken at the earlier steps provides substantial evidence for the later RFC assessment. *See Hardman v. Colvin*, 820 F.3d 142, 149 n.3 (5th Cir. 2016). The Court has held in similar cases that reversal is not required where the ALJ does not explicitly include the phrase "moderate limitations" in the RFC. *E.g. Bauer v. Berryhill*, No. 7:17-cv-00128-M-BP, 2018 WL 3999687, at *7 (N.D. Tex. July 27, 2018), *report and recommendation adopted*, No. 7:17-cv-00128-M, 2018 WL 3993812 (N.D. Tex. Aug. 21, 2018) ("[T]he ALJ did not commit error by not including moderate difficulties in concentration, persistence, or pace in her . . . RFC determination, because the functional limitations she did include accounted for those moderate difficulties and were based on the evidence."); *Holmes v. Astrue*, No. 3:11-cv-2634-G BH, 2013 WL 638830, at

\*16 (N.D. Tex. Jan. 25, 2013), *report and recommendation adopted*, No. 3:11-cv-2634-G BH, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013) (affirming the Commissioner where the ALJ found "that [the p]laintiff's moderate limitation in maintaining concentration, persistence, or pace restricted his RFC only to the extent that he could concentrate for two-hour intervals and understand, remember, and carry out detailed, but not complex, instructions"); *Westover v. Astrue*, No. 4:11-cv-816-Y, 2012 WL 6553102, at \*9 (N.D. Tex. Nov. 16, 2012) ("Based on the facts in this case, the ALJ's RFC determination limiting [claimant] to only performing work that involved detailed instructions does not appear to be inherently contradictory with the ALJ's finding in the 'special technique' that [claimant] was moderately limited in his ability to maintain concentration, persistence, or pace."). Likewise, here, the ALJ did not err by omitting moderate difficulties in concentration, persistence, or pace in her RFC determination, as the functional limitations she did include accounted for those moderate difficulties and were based on the evidence.

The ALJ properly weighed the medical opinions of record, and a reasonable mind could accept her conclusion that Henderson-Washington's moderate limitations in the area of concentration, persistence, or pace did not preclude her from performing the work outlined in the ALJ's RFC. *Ripley*, 67 F.3d at 555. Accordingly, substantial evidence supports the RFC, and reversal is improper as to this issue.

## IV.   CONCLUSION

Because the ALJ employed proper legal standards and substantial evidence in the record supports the ALJ's conclusions regarding the opinions of Mr. Miles and Henderson-Washington's mental impairments, the Court **AFFIRMS** the Commissioner's decision.

It is so **ORDERED** on December 28, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE